UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREGORY PALMISANO, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     NO. 3:10cv1869 (MRK) |
| | : |
| BRIAN JORDAN and | : |
| JOHN CUNNINGHAM, | : |
| | : |
| Defendants. | : |

**<u>MEMORANDUM OF DECISION</u>**

Plaintiff Gregory Palmisano brings suit against State Trooper Brian Jordan and Police Officer John Cunningham (collectively "Defendants") in their individual capacities. In his Complaint [doc. # 1], Mr. Palmisano asserts that he was subjected to false and warrantless arrest, arrest without probable cause, and false imprisonment in violation of the Fourth Amendment and 42 U.S.C. §§ 1983, 1988. Mr. Palmisano also brings a state law claim for intentional infliction of emotional distress.

Officers Jordan and Cunningham have each filed Motions for Summary Judgment [docs. # 39, 40]. Because a reasonable juror would conclude that Officer Cunningham had probable cause to arrest Mr. Palmisano and that Defendants did not violate the Fourth Amendment, Defendants' motions for summary judgment are GRANTED with regard to the federal claims. The Court declines to exercise supplemental jurisdiction over Mr. Palmisano's state law claim.

**I.**

The facts set forth herein are culled from the parties' Local Rule 56(a) Statements [docs. # 39-2, 40-9, 46-1, 49-1], affidavits, and exhibits. Unless otherwise indicated, all of the facts

1

recited below are undisputed; where facts are contested, the Court interprets them in favor of Mr. Palmisano, the non-moving party. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam).

On September 22, 2009, Mr. Palmisano consumed two twelve-ounce bottles of beer between 3:00 pm and 5:00 pm. He later drove to visit his girlfriend, Lorene Almario, at her home. He was alone in the vehicle, but he spoke to Ms. Almario on a cell phone with a Bluetooth device for the first half of the 40-minute drive.

Trooper Jordan, who was off-duty at the time, passed Mr. Palmisano's truck while driving with his family. While passing, Trooper Jordan believed that he observed Mr. Palmisano holding a can of beer and taking a drink. Trooper Jordan then returned to his original position behind the truck. He maintains that he saw the truck change lanes without signaling, swerve right and over the rumble strip, then change lanes and cross over the left white line and nearly strike the center media guardrail. Mr. Palmisano does not recall whether he changed lanes without signaling. He testified at his deposition that, while he did not recall crossing the median or going into the rumble strips, he could have crossed over the prohibited travel lane because he was driving a big truck. Mr. Palmisano also stated that he was drinking a can of Diet Coke in the car and that he noticed Trooper Jordan's vehicle driving erratically.

Trooper Jordan states in his affidavit that he called the State Police Barracks, was informed that no one was available, and was transferred to the Cromwell Police Department. At approximately 6:56 pm, Officer Cunningham was advised that Trooper Jordan was following a vehicle which he believed was being operated by an intoxicated driver and was dispatched to investigate.

Mr. Palmisano pulled into Ms. Almario's driveway and exited his vehicle. He was then approached by Trooper Jordan, who identified himself as an off-duty Connecticut State Trooper and stated that he believed that Mr. Palmisano had been driving while intoxicated. Upon inquiry, Mr. Palmisano reported that he had drunk two beers earlier in the day, which Trooper Jordan notes is a common response of intoxicated drivers. Trooper Jordan requested that Mr. Palmisano sit while they awaited the arrival of the Cromwell Police, who appeared approximately ten to fifteen minutes later.

Mr. Palmisano called Ms. Almario, who came out of the house and asked Trooper Jordan for identification. However, when he offered his cell phone to call his supervisor, she chose not to do so. Mr. Palmisano maintains that throughout their interaction Trooper Jordan was aggressive and intimidating.

After arriving at the scene, Officer Cunningham interviewed Trooper Jordan, who reported what he had observed while following Mr. Palmisano's truck. Officer Cunningham then approached Mr. Palmisano, at which point he noticed a slight odor of alcohol on his breath. Upon inquiry, Mr. Palmisano again admitted that he had consumed a couple of beers earlier in the day. Officer Cunningham then asked if Mr. Palmisano would perform a field sobriety test, and Mr. Palmisano agreed to do so. Mr. Palmisano also informed Officer Cunningham that he suffered from multiple sclerosis, but he provided no other information regarding how that disease affected him or might affect the results of the sobriety test. Mr. Palmisano's condition affects the nerve of one of his eyes, making it difficult for him to turn it from side to side.

Officer Cunningham explained and demonstrated each test, one of which was the Horizontal Gaze Nystagmus test. Mr. Palmisano did not state that he would have any difficulties performing any of the tests in light of his condition. During the Horizontal Gaze Nystagmus test,

Officer Cunningham observed that Mr. Palmisano was unable to follow the tip of a pen and lacked smooth pursuit in both eyes. Officer Cunningham also administered the Walk and Turn test and observed that Mr. Palmisano failed to make the proper turn and failed to take the proper number of heel-to-toe steps. Officer Cunningham also administered the One Leg Stand test and observed that Mr. Palmisano put his foot down and was unable to hold his leg up for the required period of time, although he did hold it up for 13 seconds.

Mr. Palmisano does not know the results of any of the tests or Officer Cunningham's conclusions as to his performance on any of the tests. However, Mr. Palmisano maintains that he heard one officer state to another, "I think he passed." Pl.'s Resp. [doc. # 46-3] Ex. 1 at 30 (Palmisano Dep.). Trooper Jordan heard Officer Cunningham say that Mr. Palmisano's eyes didn't look too bad.

According to Mr. Palmisano, Trooper Jordan then grabbed the penlight from Officer Cunningham and stated that he wanted to re-do the Horizontal Gaze Nystagmus test. When Trooper Jordan performed the test, Mr. Palmisano was unable to follow the flashlight with a smooth pursuit of both eyes. According to Mr. Palmisano, Trooper Jordan then began ranting and raving, saying, "He's over. He's over. Eyes don't lie. Eyes don't lie." Pl.'s Resp. [doc. # 46-3] Ex. 3 at 18, 31 (Almario Dep.). Officer Cunningham then arrested Mr. Palmisano for driving while intoxicated, as was within the scope of his and the other Cromwell police officers' authority. Trooper Jordan did not tell Officer Cunningham to arrest Mr. Palmisano, nor did he have the authority to do so.

Mr. Palmisano was transported to the Cromwell Police Department for processing. At the station, he was advised of his Miranda rights, afforded the opportunity to speak with an attorney (which he declined), and was asked if he would be willing to submit to a breathalyzer test. Mr.

Palmisano agreed to do so; one test was administered at 7:37 pm with a result of .033, and a second one was administered at 8:12 pm with a result of .026. Mr. Palmisano was told that he passed, and while he was issued a misdemeanor summons for violation of Connecticut General Statutes § 14a-227a and released on a non-surety bond, he was told that the charge would likely be thrown out of court. The charge was eventually either *nolled* or dismissed.

After Officer Cunningham left the scene, Trooper Jordan had no further contact with Mr. Palmisano. Trooper Jordan also never had any contact with the prosecutor or the court regarding Mr. Palmisano's arrest.

The experience of being questioned, arrested, and having to appear in court left Mr. Palmisano upset, and he has since lost sleep thinking about it. He also missed two days of work—he is self-employed—due to his emotional distress, and he estimates that this resulted in a loss of approximately $1,200.00.

## II.

This Court applies a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). A "material fact" is one whose resolution will affect the ultimate determination of the case. *See Anderson*, 477 U.S. at 248. A factual dispute is "genuine" when the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *See id.*; *see also Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006).

5

In a motion for summary judgment, the burden is initially on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (quotation marks and citations omitted). In evaluating the moving party's evidence, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Sologub v. City of N.Y.*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks omitted). If the moving party meets this burden, the party against whom summary judgment is sought "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quotation marks omitted) (emphasis in original). The plaintiff may not prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," *id.* at 587, as "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff],'" *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson,* 477 U.S. at 252). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Merely verifying—or contesting—the allegations of the complaint in an affidavit is insufficient to oppose a motion for summary judgment. *See Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

Here, while the parties dispute numerous minor or collateral facts, summary judgment is appropriate because there are no genuine issues of material fact. *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005).

### III.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Claims for false arrest . . . brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Under Connecticut law, "false imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe*, 186 Conn. 265, 267 (1982). As claims for false arrest and false imprisonment are identical under Connecticut law, even when there is a warrantless arrest, these claims will fail if the defendant had probable cause to arrest the plaintiff. *See, e.g.*, *Russo v. Bridgeport*, 479 F.3d 196, 203 (2d Cir 2007); *Beinhorn v. Saraceno*, 23 Conn. App. 487, 491 (Conn. App. Ct. 1990). The plaintiff bears the burden of demonstrating that an arrest was made without probable cause. *See Russo*, 479 F.3d at 203.

> As the Second Circuit recently clarified, the probable cause inquiry
>
> is an objective one that focuses on the facts available to the arresting officer at the time of the arrest. Probable cause exists when, based on the totality of circumstances, the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.

*Finigan v. Marshall,* 574 F.3d 57, 61-62 (2d Cir. 2009) (citations and quotation marks omitted); *see also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (noting that probable cause requires more than bare suspicion, but that it exists where a reasonable person would believe that "an offense has been or is being committed"). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully,

reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Finigan*, 574 F.3d at 63 (quotation marks omitted). Because the Court finds that there are no genuine disputes of material facts, the existence of probable cause is properly decided as a matter of law. *See Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

> The applicable state statute provides in relevant part:
>
> No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offence of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content.

Conn. Gen. Stat. § 14-227a(a).

### A.

A police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The Fourth Amendment does require "at least a minimal level of objective justification for making the stop," *id.*, which means that "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity," *id.* at 123-24 (quoting *Terry*, 392 U.S. at 27).

Trooper Jordan did not seize Mr. Palmisano by approaching and questioning him. *See, e.g.*, *Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public

place, by asking him if he is willing to answer some questions [or] by putting questions to him if the person is willing to listen . . . ." (quotation marks omitted)). Based on his observations, Trooper Jordan also had a reasonable suspicion that Mr. Palmisano had violated the law. As a result, Trooper Jordan did not violate Mr. Palmisano's constitutional rights when stopping him for questioning.

B.

It is undisputed that Officer Cunningham heard Trooper Jordan state that he had witnessed Mr. Palmisano driving in an erratic manner, that Mr. Palmisano had admitted to drinking two beers, that Officer Cunningham smelled alcohol on Mr. Palmisano's breath, and that Mr. Palmisano failed three field sobriety tests.[1] Although Officer Cunningham learned that Mr. Palmisano suffered from multiple sclerosis, he was not informed at the time whether or how this might affect Mr. Palmisano's ability to perform the field sobriety tests.

Even ignoring the result of the tests, Officer Cunningham had ample reason to believe that Mr. Palmisano might have violated the prohibition on driving while intoxicated and that he had the right to make a warrantless arrest. *See* Conn. Gen. Stat. §§ 14-227a(a); 54-1f. Accordingly, Officer Cunningham had probable cause to arrest Mr. Palmisano, and Mr. Palmisano's false arrest and imprisonment claims fail. *See, e.g.*, *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (noting that an officer may rely on the testimony of eyewitnesses to establish probable cause); *Clynch v. Chapman*, 285 F. Supp. 2d 213, 226 (D. Conn. 2003) (holding that there was probable cause to arrest plaintiff where it was undisputed that the plaintiff told the officer that he had recently consumed beer, that his eyes were glassy and

---

[1] Mr. Palmisano maintains that the Cromwell police department was aware of the fact that the symptoms of multiple sclerosis include imbalance and lack of coordination. However, this is irrelevant, as there is no evidence that either Trooper Jordan or Officer Cunningham knew of these symptoms.

bloodshot, that his speech was slightly slurred, that he and his car smelled of alcohol, and that he was unable to perform two sobriety tests, even though plaintiff asserted that he had a physical impairment that prevented him from passing the two tests); *Colon v. Tucciarone*, No. CIV 3:02CV891 (PCD), 2003 WL 22455005, at *2 (D. Conn. Jul. 21, 2003) (finding that probable cause for arrest existed where the plaintiff admitted to drinking, smelled of alcohol, had glassy eyes and slurred speech, and failed a field sobriety test) (citing cases).

The fact that Mr. Palmisano later passed a breathalyzer test is of no import; the only relevant facts are those known to the arresting officer at the time of the arrest. *See, e.g.*, *Finigan*, 574 F.3d at 61-62 (2d Cir. 2009); *Leibin v. Town of Avon*, No. 3:08cv266 (MRK), 2010 WL 3038100, at *6 (D. Conn. Aug. 4, 2010) (holding that a subsequent breathalyzer test did not negate probable cause to arrest the plaintiff for a violation of Conn. Gen. Stat. § 14-227a where plaintiff had a faint odor of alcohol, admitted to consuming alcohol, and failed field sobriety tests).

It is also immaterial that Mr. Palmisano was charged after he passed the two breathalyzer tests. Under Connecticut law, a person's post-stop behavior alone can establish probable cause for arrest based on a violation of Connecticut General Statutes § 14-227a. *See Clynch*, 285 F. Supp. 2d at 226-27; *Colon*, 2003 WL 22455005, at *2; *Leibin*, 2010 WL 3038100, at *6.

Finally, Mr. Palmisano's claim that Trooper Jordan was determined to have him arrested and influenced Officer Cunningham's decision is irrelevant, as the probable cause evaluation is an objective one. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that an officer's subjective intentions "play no role in ordinary, probable-cause Fourth Amendment analysis"). This is especially true in this case, where Trooper Jordan was not the arresting officer and did not have any authority to compel Officer Cunningham to arrest Mr. Palmisano.

C.

Even if the "facts supporting probable cause to arrest are ultimately found not to have existed," an officer may still be entitled to qualified immunity on the basis of "'arguable probable cause,' which requires that he or she show that it was objectively reasonable to believe that probable cause existed or that officers of reasonable competence could disagree on whether the probable cause test was met." *Finigan*, 574 F.3d at 61 (quotation marks omitted). Based on the aforementioned facts, a reasonable trier of fact would find that arguable probable cause to arrest Mr. Palmisano existed and that Officer Cunningham is therefore entitled to qualified immunity from Mr. Palmisano's false arrest and imprisonment claims.

Mr. Palmisano argues, however, that Officer Cunningham would not have arrested him but for Trooper Jordan's actions, and that Trooper Jordan did not have probable cause to arrest him. Putting to the side all contested questions of fact, Mr. Palmisano admits that he may have crossed over into the prohibited travel lane while driving, and he cannot remember whether he changed lanes without signaling. The parties agree that, in response to Trooper Jordan's questions, Mr. Palmisano stated that he had drunk two beers and that Trooper Jordan witnessed Mr. Palmisano fail three field sobriety tests. Based on this record, the Court finds that even if Trooper Jordan was actually responsible for Mr. Palmisano's arrest, he had arguable probable cause and is therefore also entitled to qualified immunity.

Because Mr. Palmisano failed to demonstrate that Defendants lacked probable cause or arguable probable cause to arrest him, Defendants' motions for summary judgment are granted with regard to the federal claims.

**IV.**

The Court is skeptical that Mr. Palmisano can prevail on a claim of intentional infliction of emotional distress. *See, e.g.*, *Appleton v. Bd. of Educ. Of the Town of Stonington*, 254 Conn. 205, 210 (2000) (requiring that a plaintiff demonstrate, *inter alia*, that the defendant's conduct was extreme and outrageous and that the emotional distress sustained by the plaintiff was severe). However, as the Court has dismissed Mr. Palmisano's federal claims, it declines to exercise supplemental jurisdiction over this state law claim. *See* 28 U.S.C. § 1367(c)(3) (noting that a district court may decline to exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).

**V.**

The Motions for Summary Judgment [docs. # 39, 40] are GRANTED with regard to the federal law claims, and so all of Mr. Palmisano's federal claims are DISMISSED. The Court declines to exercise supplemental jurisdiction over Mr. Palmisano's claim for intentional infliction of emotional distress. **The Clerk is directed to enter judgment in favor of Defendants and to close this case.**

IT IS SO ORDERED.

/s/    Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **May 30, 2012.**